O 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court
### DISTRICT OF DELAWARE

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

The First Floor Bedroom and a
First Floor Office at

NEWARK, DELAWARE 19713

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**



CASE NUMBER: 06-149M-MPT

I, **Tina DiClementi**, being duly sworn depose and say: I am a **Special Agent with Immigration and Customs Enforcement** and have reason to believe that

___ on the person of or  X X  on the property or premises known as (name, description and/or location)

    The first floor bedroom and a first floor office at                    ,
    Newark, Delaware 19713, more particularly described in Attachment A,
    which is incorporated herein by reference,

in the _____ District of ____Delaware____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

    See Attachment B, which is incorporated herein by reference,

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rule of Criminal Procedure)

property that constitutes evidence of the commission of a criminal offense, the fruits of crime and things criminally possessed and property designed and intended for use and which has been used as a means of committing a criminal offense described in the affidavit hereto and incorporated by reference concerning a violation of 18 U.S.C. § 1958.

The facts to support a finding of Probable Cause are as follows:

    See attached affidavit of Special Agent Tina DiClementi, which is
    incorporated herein by reference.

Continued on the attached sheets and made a part hereof.   _X_ Yes  ___ No

                                                 _/s/ Signature_
                                                 Signature of Affiant
                                                 Special Agent Tina DiClementi

Sworn to before me, and subscribed in my presence
**December 5, 2006**                              at   ____Wilmington, Delaware____
Date                                                    City and State
Honorable Mary Pat Thynge
United States Magistrate Judge
District of Delaware
Name and Title of Judicial Officer                       Signature of Judicial Officer

FILED  DEC 5 2006  U.S. DISTRICT COURT  DISTRICT OF DELAWARE

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES COMMONLY KNOWN AS<br><br>129 BRENNEN DRIVE<br>NEWARK, DELAWARE 19713 | *<br>*<br>*  ~~MISC. NO.~~ 06-149M-MPT<br>*<br>*<br>*<br>* |

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Tina DiClementi, being duly sworn, depose and state:

1.   I am a Special Agent of the United States Immigration and Customs Enforcement ("ICE"), presently assigned to the Seaport HIDTA Taskforce in Baltimore, Maryland. I have been a Special Agent with ICE since 2003. From 1996 to 2003, I was a U.S. Customs and Border Protection Officer. During my ten years in federal law enforcement, I have participated in numerous federal narcotic investigations and assisted in numerous other federal investigations, and assisted in the execution of numerous federal search and seizure warrants. I have also participated in numerous arrests.

### PURPOSE OF THIS AFFIDAVIT

2.   This affidavit is made in support of an application for a warrant to search the bedroom occupied by **Leslie Thorn** ("Thorn") located at Newark, Delaware 19713, which is more specifically described in Attachment A, which is incorporated herein by reference. The purpose of this affidavit is to seize evidence in

1

violation of 18 U.S.C. Section 1958, which makes it a crime to travel in or cause another to travel in interstate commerce for the commission of murder-for-hire.

3. As a federal agent, your Affiant is authorized to investigate violations of laws of the United States and is a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4. I am familiar with the information contained in this Affidavit based upon the investigation I have conducted and based on my conversations with other law enforcement officers who have participated personally in this investigation and who have engaged in numerous federal investigations themselves.

5. Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 1958 are located at _____, Newark, Delaware. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

6. The informant described in the affidavit is a proven reliable informant that has provided information in other investigations that was both reliable and corroborated. Information received by the informant has led to the execution of search warrants and arrests in other investigations.

7. As a result of the instant investigation described more fully below, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of

federal law, including 18 U.S.C. § 1958, are present at                    , Newark, Delaware.

8.  The instant investigation has revealed that, in the District of Delaware and elsewhere, **Thorn** did travel in interstate commerce from the state of Delaware to the state of Maryland and to the state of Pennsylvania, with the intent that the murder of Olivia DeFeo Caltabiano ("Caltabiano") be committed in violation of the laws of the state of Pennsylvania, as consideration for the receipt of, and as consideration for a promise and agreement to pay, things of pecuniary value, to wit, a sum of United States currency, to be paid by **Thorn** to an individual who was to commit the aforesaid murder.

## PROBABLE CAUSE TO SEARCH

9.  In November 2006, **Thorn** contacted a confidential informant utilized by Immigration and Customs Enforcement (ICE). **Thorn** told the informant that she wished to have her 83-year-old stepmother murdered and solicited the informant to commit the crime. **Thorn** told the informant that she was angry at her stepmother over an inheritance that passed to the stepmother when **Thorn's** father, Joseph Caltabiano, passed away. **Thorn** represented that the stepmother received approximately $1,000,000 from the estate of **Thorn's** father and that **Thorn** had not received her fair share. **Thorn** told the informant that she wanted assistance in extorting approximately $200,000 from the stepmother and then having the woman murdered. **Thorn** said that she did not have the money to pay up front but that she would pay him or someone else $20,000 after receiving the money extorted from the stepmother. **Thorn** did not discuss

3

the specific details of how to extort the money from the stepmother at this time. **Thorn** stated that the intended victim resided in Pennsylvania and that she, **Thorn**, currently lived in Newark, Delaware. **Thorn** met on two occasions with the informant in the state of Maryland to discuss the murder. **Thorn** would contact the informant using a cell phone, phone number          . To contact **Thorn**, the informant would call that cell phone number as well.

    10.    As a result of the solicitations by **Thorn** of the informant, investigators decided to introduce an undercover agent to **Thorn** to pose as a "hit-man." On November 22, 2006, **Thorn** met with the undercover at the Maryland House Rest Area on Interstate 95 in Harford County, Maryland. At the meeting, **Thorn** told the undercover agent that she wanted him to kill her stepmother, whom she identified as Olivia Defeo Caltabiano. She also told the undercover that Caltabiano lives on Ruskin Road in Upper Darby, Pennsylvania. **Thorn** and the undercover discussed how **Thorn** was going to pay the undercover for murdering her stepmother. **Thorn** stated that she did not have the money to pay the undercover up front but that the undercover should steal checks from the stepmother before the undercover killed her. After the murder, **Thorn** would negotiate the checks for cash and split whatever money they were able to get as payment for the murder, as long as **Thorn** got at least $300,000 to buy a new house. **Thorn** stated several times that she did not want to get caught. At the end of the meeting, **Thorn** stated that she would get pictures of Caltabiano's house and Caltabiano's address and contact the informant for her and the undercover to meet

again. This meeting in Maryland was both videotaped and audio recorded.

11. On November 27, 2006, **Thorn** picked up the informant in her 1991 Honda Civic at a Shell gas station located on Route 4 in Newark, Delaware. They then drove to the Dollar Tree in the University Plaza Shopping Center in Newark, Delaware and purchased a camera. They then traveled to Pennsylvania to take pictures of the residence where Caltabiano resides. While outside of the residence, at **Thorn's** direction, the informant took several pictures of _____ in Upper Darby, Pennsylvania, where Caltabiano resides, and several pictures of another home where **Thorn** believed that Caltabiano sometimes stayed. **Thorn** lacked the money to develop the pictures. Therefore, after returning to Delaware, **Thorn** requested that the informant have the pictures developed.

12. On November 28, 2006, the informant gave the camera to Special Agent Kelly Baird of ICE. The pictures were unable to be developed because the poor quality of the camera caused the film to wind improperly, and no pictures were able to be developed from the film.

13. On November 29, 2006, the informant met **Thorn** at the intersection of _____ and Route 4 in Newark, Delaware. The informant drove to the Pathmark in the University Plaza Shopping Center in Newark, Delaware to purchase a disposable camera. They then returned to _____ in Upper Darby, Pennsylvania to take more pictures of Caltabiano's residence. After taking the photographs, the informant dropped Thorn off at her residence at _____, Newark, Delware, where he saw her 1991 Honda Civic parked out front. Again **Thorn** requested that the informant

5

have the photographs developed. The informant delivered the disposable camera to SA Jeffrey Ryan of ICE. SA Ryan had the pictures developed at Rite-Aid in Elkton, Maryland. Two copies of the photos were made. The informant gave one set of copies to **Thorn**, while SA Ryan retained the second set of copies.

14. On November 30, 2006, **Thorn** again met with the undercover agent at the Maryland House Rest Area on Interstate 95 in Harford County, Maryland. During this meeting, **Thorn** gave the undercover the photos of Caltabiano's residence, which matched the set of photographs retained by your Affiant. **Thorn** did not have a photograph of Caltabiano, but described her to the undercover as a tall, red-headed eighty-year-old woman.

15. Also at that meeting, **Thorn** provided the undercover with directions to Caltabiano's home from the 69th Street Terminal in Philadelphia, Pennsylvania. The undercover told **Thorn** that he would contact her through the informant to meet her after the murder was executed. It was anticipated that at the next meeting the undercover would give **Thorn** the checks that the undercover took from Caltabiano and receive payment from **Thorn** for the murder. This meeting with the undercover was videotaped and audio recorded.

16. On December 4, 2005, Federal Magistrate Judge Beth P. Gesner of the District of Maryland, finding probable cause that **Thorn** committed a crime, signed a warrant for the arrest of **Thorn** for violation of 18 U.S.C. § 1958.

17. A review of **Thorn**'s credit history reveals that **Thorn** is in extreme debt. Within the last year, **Thorn** has had a vehicle repossessed and, after her failure to pay

several credit cards, the debts were charged off by the credit card companies. It appears to your Affiant that **Thorn** is currently unable to repay other existing debts.

18. Subscriber records of the Cingular cell phone used by **Thorn**, reveal that the cell phone used by **Thorn** to contact the informant and used by the informant to contact **Thorn** is subscribed to by someone else and not by **Thorn**.

19. An inquiry of the State of Delaware Motor Vehicle Administration records shows that **Thorn** resides at ' , Newark, Delaware and her 1991 Honda Civic is registered to , Newark, Delaware. On Sunday, November 26, 2006, SA Jeffrey Ryan of ICE conducted surveillance of and saw **Thorn's** 1991 Honda Civic parked outside of . In addition, the informant dropped **Thorn** off at after they traveled to Pennsylvania to take pictures of Caltabiano's residence on November 29, 2006.

20. On December 5, 2006, Thorn was arrested by ICE agents in Harford County, Maryland. After her arrest, **Thorn** told SA Jeffrey Ryan that she occupies a first floor bedroom at and described the bedroom as having a white door and as being located directly across from the only bathroom on the first floor

21. On December 5, 2006, ICE agents went to 129 Brennen Drive and spoke with the owner of the home. He indicated that **Thorn** rents both the bedroom she described and the first floor office next to that bedroom.

## REQUEST TO SEARCH

22. There appears to be a financial motive for this crime. Therefore, all documents relating to the financial condition of **Thorn**, as well as other items listed in

7

Attachment B are likely to be found at **Thorn's** residence and are relevant to and probative of the crime under investigation.

23.   Based on your Affiant's training, knowledge, experience, and participation in other investigations, business and personal records of individuals are frequently maintained in their residences and are typically maintained for extended periods of time. These records include: checking, savings, and money market account statements; wire transfer, money order, and cashier check records; brokerage account statements; canceled checks; deposit and withdrawal slips; insurance records; telephone and address books; airline tickets; passports; credit card statements and supporting bills; records of personal and cash expenses; invoices; rolodexes; mortgage/loan satisfaction records; lease agreements; deeds; notes; correspondence; safe deposit box records and keys; records and keys of storage boxes owned and rented; loan/mortgage applications and agreements; computer software; fax machines; computer equipment; and phone records and bills.

## CONCLUSION

24.   Based on the foregoing, your Affiant submits that there is probable cause to believe that **Lucille Thorn** committed the crime of traveling or causing another to travel in interstate commerce for the commission of murder-for-hire in violation of 18 U.S.C. Section 1958. Specifically, on or about November 22, 2006, in the District of Delaware and elsewhere, **Thorn** did travel in interstate commerce from the state of Delaware to the state of Maryland, with the intent that the murder of Olivia DeFeo Caltabiano be committed in violation of the laws of the state of Pennsylvania, as

consideration for the receipt of, and as consideration for a promise and agreement to pay, things of pecuniary value, to wit, a sum of United States currency, to be paid by **Thorn** to an individual who was to commit the aforesaid murder.

25. Based upon the foregoing, your Affiant respectfully requests that this Court issue a search warrant for                    , Newark, Delaware 19713, more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B.

					_____
					Tina DiClementi, Special Agent
					U.S. Immigration and Customs Enforcement

SUBSCRIBED TO AND SWORN TO
BEFORE ME THIS 6 DAY OF
DECEMBER, 2006

					_____
					Mary Pat Thynge
					United States Magistrate Judge
					District of Delaware

9

## ATTACHMENT A

The residence located at lewark, Delaware is a white Cape Cod style two-story-house, displaying the number The residence has a driveway on the left side of the house.

The bedroom occupied by Lucille Thorn at is located on the first floor directly across from the only bathroom on the first floor. The door to the bedroom is painted white. This bedroom is occupied solely by Thorn and is the only bedroom on the first floor.

The office occupied by Lucille Thorn at is located on the first floor, on right side of the house at the end of the first floor hallway. The door to the office is painted white.

## ATTACHMENT B

### ITEMS TO BE SEIZED

1. Any and all notes and records pertaining to murder for hire; notes, records, correspondence, diaries, address books; receipts, notes, and records of financial transactions, including receipt and transfer of cash deposits.

2. Notes and records pertaining to bank accounts.

3. Notes and records pertaining to the inheritance of Joseph Caltabiano.

4. Notes and records pertaining to the cellular phone used by Lucille Thorn in connection with the murder for hire.

5. Documents that indicate residency and proof of ownership of real property, vehicles, and other assets.

6. Any computers, peripheral devices, and related electronic storage devices, which could contain the information set forth in item 1 above.